Lonnie E. TURNER, Plaintiff-Appellant;

v.

Margaret HECKLER, Secretary of the Department of Health and Human Services, Defendant-Appellee.

No. 83–2307.

United States Court of Appeals, Tenth Circuit.

Feb. 8, 1985.

Bruce P. Moore, Moscow, Idaho, and David L. Duhigg of Duhigg & Cronin, Albuquerque, N.M., for plaintiff-appellant.

William L. Lutz, U.S. Atty., Ronald F. Ross, Asst. U.S. Atty., Albuquerque, N.M., and Jason R. Baron, Trial Atty., Dept. of Health and Human Services, Baltimore, Md., for defendant-appellee.

Before SEYMOUR, BREITENSTEIN and SETH, Circuit Judges.

SEYMOUR, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir. R. 10(e). The cause is therefore ordered submitted without oral argument.

Lonnie Turner brought this action under 42 U.S.C. § 405(g) (1982) after his application for Social Security disability benefits was denied. The district court determined that the administrative decision was supported by substantial evidence and dismissed the action. Turner appeals. We reverse and remand for further proceedings.

I.

Turner has been unemployed since he injured his back on August 6, 1980, while working as a school custodian. Following this injury, Turner was found to have a herniated disc and disc degeneration. On September 23, Turner underwent a laminectomy and the fusion of a vertebra to the sacrum. After the operation, Turner repeatedly visited his surgeons and various hospital emergency rooms complaining of incapacitating headaches and back pain. Dr. Gold, one of the neurosurgeons who performed Turner's disc surgery, diagnosed tension headaches and prescribed painkillers and a TNS stimulator. The surgeons' reports and the hospital emergency room logs indicate that no objective organic cause was found for Turner's headaches and back pain. However, Turner was also examined at government expense by Dr. Dempsey, a psychiatrist and neurologist, who diagnosed psychophysiological pain reaction in the lower back, and depression. Dr. Dempsey's report stated that "individuals with this syndrome of low back pain and episodic depression have rather poor prognoses and frequently do require hospitalization, although this is certainly not the case with this claimant at the present time." Rec., vol. II, at 129. In addition to the problems arising from his back injury, Turner had previously lost half his stomach, his right kidney, his duodenum, and half his pancreas from an unrelated injury, causing dumping syndrome. He also has an ulcer as a result of the medication he has been taking.

After Turner's original request for benefits was denied, he obtained a hearing before an administrative law judge (ALJ). At the hearing Turner testified that when he stands, sits, or walks for any length of time his leg and tailbone begin to hurt, and that this pain precipitates incapacitating headaches. He stated that he can only walk four or five blocks and sit five or ten

minutes at a time before these symptoms begin. Turner testified that his left leg becomes numb and unstable and that he often feels as if he is going to fall. After the operation, Turner attended a pain clinic for several months without obtaining relief. He attempted to ride an exercycle as recommended by his surgeon but had to give it up because the seat exacerbated his tailbone pain. The ALJ reviewed the medical evidence and Turner's testimony and found him to be disabled because of his back and psychological problems, complicated by his stomach and ulcer problems.

The Appeals Council reviewed the ALJ's decision on its own motion and concluded that Turner was not disabled. The Council found that Turner's complaints of pain were not credible because they had no objective explanation and because Turner had a tendency to exaggerate his medical history or give conflicting information. The Council disregarded portions of a residual functional capacity assessment prepared by Turner's surgeon and determined that Turner retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567 (1984). The Council further found that Turner's nonexertional limitations did not significantly affect his capacity to perform light work and that he was not disabled under the medical-vocational guidelines (grids) set out in 20 C.F.R. § 404, subpt. P, app. 2 (1984) (hereinafter cited as App. 2). We conclude that these findings are not supported by substantial evidence, and that the Council erred in applying the guidelines to determine whether Turner was disabled. Accordingly, we reverse and remand for further administrative proceedings.

## II.

▮ A claimant seeking benefits under the Social Security Act bears the burden of establishing a disability. However, once the claimant has made a prima facie showing that he can no longer engage in his prior work activity, the burden shifts to the Secretary to show "that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984); *see also Broadbent v. Harris,* 698 F.2d 407, 412 (10th Cir.1983). The Secretary's determination on the issue of disability will be affirmed if it is supported by substantial evidence. *Nieto v. Heckler,* 750 F.2d 59, 60 (10th Cir.1984). Substantial evidence is more than a mere scintilla, and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

In this case the Appeals Council did not find that Turner could return to his prior work. Instead it found that Turner was not disabled by relying on the grids set out in App. 2. These grids

"consider a claimant's residual functional capacity [RFC]—the functional level of work that he is physically able to perform on a sustained basis—in relation to his age, education, and work experience, and then set forth corresponding rules that identify whether there exist a significant number of jobs in the national economy that the claimant can perform. Where the claimant's characteristics coincide with the criteria of a specific rule in the grids, that rule directs a conclusion as to whether the claimant is disabled."

*Channel,* 747 F.2d at 578.

In *Channel,* we considered the circumstances under which the Secretary can properly resort to the grids. We pointed out that "the grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule," *id.* at 579, and that "a claimant must be able to perform the *full range* of such work on a daily basis in order to be placed in a particular RFC category." *Id.* at 579–80. "*[W]ithin* a range of work (sedentary, light, medium, heavy or very heavy) unless the individual possesses physical capacities equal to the strength requirements for

*most* of the jobs in that range, he or she cannot be classified as able to do the pertinent range of work." *Id.* at 580 (quoting 43 Fed.Reg. 55,349, 55,361 (1978)) (emphasis added in *Channel* ). As the Supreme Court has stated:

"If an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered. See app. 2, §§ 200.00(a), (d). Additionally, the regulations declare that the Administrative Law Judge will not apply the age categories 'mechanically in a borderline situation,' 20 C.F.R. § 404.-1563(a), and recognize that some claimants may possess limitations that are not factored into the guidelines, see app. 2, § 200.00(e). Thus, the regulations provide that the rules will be applied only when they describe a claimant's abilities and limitations accurately."

*Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 1955 n. 5, 76 L.Ed.2d 66.

■ In this case, the Appeals Council determined that Turner had the RFC to perform the full range of light work.

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as

loss of fine dexterity or inability to sit for long periods of time."

20 C.F.R. § 404.1567(b) (1984). However, one of the surgeons who had performed Turner's surgery, Dr. Maron, reported that Turner could only sit for two or three hours at a time, and could stand or walk for a total of no more than one to two hours during an eight hour day. As the Council recognized, Dr. Maron's assessment is not consistent with the requirements for light work. "Unless good cause is shown to the contrary, the Secretary must give substantial weight to the testimony of the claimant's treating physician. If the opinion of the claimant's physician is to be disregarded, specific, legitimate reasons for this action must be set forth." *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984) (citations omitted).

The Appeals Council rejected Dr. Maron's assessment because it said that he did not explain why he reached his conclusions or give current medical findings to support his opinion. We believe the series of medical reports prepared by Dr. Maron is more than adequate to support his conclusion. Moreover, the only evidence contradicting Dr. Maron's conclusions is the reports of two nonexamining government physicians, prepared over a year prior to Dr. Maron's RFC assessment, and before the fusion had even been determined to be solid. These reports referred to only one of Dr. Maron's earlier medical reports and disregarded it.[1]

"In determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim."

---

**1.** Significantly, Dr. Maron had stated in this report that he would allow Turner "to pursue purely sedentary work sometime towards the end of 1981. He should be assigned to a sedentary or at most light work existence for an indefinite period of time. It takes at least eighteen to twenty-four months for tissue maturation to occur around the spine fusion and for symptoms to at least reach their maximum level

of improvement." Rec., vol. II, at 133. The Appeals Council rejected Dr. Maron's decision that Turner could not begin even purely sedentary work until toward the end of 1981 because it was not supported by medical finding. The Council's disregard of this recommendation by a treating physician is patently unsupportable in view of the quoted specific medical reasons provided by Dr. Maron.

*Broadbent,* 698 F.2d at 412. Thus we conclude that the Council's decision to disregard Dr. Maron's assessment is not supported by legitimate reasons or substantial evidence.

Finally, we consider the Appeals Council's finding that Turner's complaints of incapacitating pain were not credible despite the ALJ's conclusion that they were. In determining whether the Appeals Council's decision is supported by substantial evidence, we point out that "evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the [Appeals Council] than when he has reached the same conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951).

■■■ The primary reason for the Council's refusal to accept Turner's complaints of pain appears to be the Council's conclusion that the pain was not shown to be caused by an objectively ascertainable physical condition. However, the law is clear that subjective pain need not be shown to have an objective physical origin to be disabling. *See, e.g., Donato v. Secretary of Dept. of Health and Human Services,* 721 F.2d 414, 419 (2d Cir.1983); *Mallett v. Schweiker,* 721 F.2d 256, 258 (8th Cir.1983); *Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir.1981); *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 386 (6th Cir.1978). Moreover, Turner's subjective pain is supported by the medical opinion of Dr. Dempsey, the psychiatrist and neurologist who examined Turner at government expense. Dr. Dempsey diagnosed Turner as suffering from psychophysiological pain reaction, an accepted medical diagnosis which by definition includes a substantial non-physical element.[2] Accordingly, the Council may not find Turner's complaints of pain unworthy

of belief merely because the record reveals no physical cause.

"If the Appeals Council concludes that it must disagree with the credibility findings of an administrative law judge, then it may do so, but only if there is substantial evidence undercutting the reliability of the testimony, evidence which 'a reasonable mind might accept as adequate to support a conclusion' that the administrative law judge was wrong about the credibility of the witness, in spite of the advantage of having heard the testimony and lived with the case."

*Id.* at 388. We have concluded that the lack of an objective cause for Turner's pain is not substantial evidence supporting the Council's rejection of his credibility. The other reasons provided by the Council are similarly unsupported by evidence that a reasonable mind would accept as adequate. For example, the Council referred to a letter in which Dr. Gold stated that he had told Turner "it had been six months now since his operation and it is probably time for him to get better and go to work." Rec., vol. II, at 126. The Council believed that this statement *suggests* Dr. Gold *may* have been questioning Turner's credibility. This tentative inference is unwarranted by what is at most an ambiguous remark, particularly when there is no evidence that any other examining physician doubted the reality of Turner's pain. The Council also refers to a hospital emergency room log which the Council believes shows that Turner exaggerated his problems. The triage notes state that Turner "had 3 laminectomy at St. Joe's for Ruptured Discs." Rec., vol. II, at 139. This cryptic note is as susceptible to the interpretation that Turner had correctly reported surgery on three vertebrae, as it is to the Council's interpretation that Turner had reported three operations.

In sum, the record does not contain substantial evidence to support the Council's decision that Turner's subjective com-

---

2. The Council appears to have rejected this diagnosis as a medical basis for subjective pain because Turner exhibited no major symptoms of psychopathology. However, the record contains no evidence that major symptoms are a necessary medical requisite to a diagnosis of psychophysiological pain reaction.

plaints of pain were not credible. The evidence supporting the Council's conclusion is hardly substantial standing alone. It becomes even less significant when considered against Turner's serious physical problems, the diagnosis of his psychological syndrome, his persistent attempts to find relief for his pain, and his willingness to try any treatment prescribed. *See Beavers,* 577 F.2d at 387.

In *Channel* we pointed out that the grids are not applicable when nonexertional impairments such as pain are present. 747 F.2d at 580–81. The grids likewise may not be used when the claimant's physical limitations do not fit exactly the requirements of a particular RFC. These conditions are present here. The Council's reliance on the grids in this case was therefore inappropriate. Accordingly we remand to the district court to remand to the Secretary for an individualized determination of Turner's disability in which full consideration must be given to all the relevant facts, including expert vocational testimony if necessary. *See Channel,* 747 F.2d at 582–83.

Reversed.