**Jerry L. KREIE, Plaintiff,**

v.

**Otis BOWEN, Secretary of Health and Human Services of the United States, Defendant.**

No. 84–1761.

United States District Court, D. Kansas.

Jan. 30, 1987.

---

David H.M. Gray, Gragert, Hiebert & Gray, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This is an action to review the final decision of the Secretary of Health and Human Services [42 U.S.C. § 405(g)] denying disability benefits to plaintiff Jerry Kreie. The case is before the court on defendant's motion to affirm its decision and on plaintiff's motion to reverse that decision.

Plaintiff applied for disability insurance benefits on July 11, 1983, alleging his disability began October 10, 1978. The application was denied upon initial consideration and reconsideration. The ALJ noted that plaintiff had received three previous hearings, resulting in a denial of benefits each time. The latest of those three denials was on March 21, 1983, which embraced the same time period as the current application. The ALJ considered the current application because a medical report was unavailable to the ALJ in the previous decision. The ALJ found that plaintiff was not disabled at any time prior to December 30, 1982, or through the date of this decision on April 23, 1984. The Appeals Council denied plaintiff's request for review.

The court's standard of review in such a case is set forth in 42 U.S.C. § 405(g), which provides that "the finding of the Secretary as to any fact, if supported by

substantial evidence, shall be conclusive." Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401–02, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971); *Turner v. Heckler,* 754 F.2d 326, 328 (10th Cir.1985). Although it is not the duty of this court to reweigh the evidence, the findings of the Secretary will not be mechanically accepted. *Claassen v. Heckler,* 600 F.Supp. 1507, 1509 (D.Kan. 1985). Nor will the findings be affirmed by isolating facts and labelling them "substantial evidence," as the court has the duty to scrutinize the entire record in determining whether the Secretary's conclusions are rational. *Holloway v. Heckler,* 607 F.Supp. 71, 72 (D.Kan.1985). The court follows these standards while attentive to the purpose of the Social Security Act to ameliorate some of the rigors of life for the disabled. *Dvorak v. Celebrezze,* 345 F.2d 894 (10th Cir.1965); *Holloway,* 607 F.Supp. at 72.

The claimant has the burden to prove a disability within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5). The claimant is " 'under a disability only if' his physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in 'any other kind of substantial gainful work' existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)." *Knipe v. Heckler,* 755 F.2d 141, 145 (10th Cir.1985). After the claimant makes a prima facie showing that his disability prevents him from returning to his previous work, the Secretary bears the burden of going forward and must show that claimant has the capacity to perform alternative work and that this type of job exists in the national economy. *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984).

Prior to 1978, the Secretary relied on vocational experts to establish the existence of suitable jobs in the national economy; thereafter, the Secretary promulgated medical-vocational guidelines which establish the type and number of jobs available in the national economy based on combinations of four factors: physical ability, age, education, and work experience. *Heckler v. Campbell,* 461 U.S. 458, 461–62, 103 S.Ct. 1952, 1954–55, 76 L.Ed.2d 66 (1983), *see* 20 C.F.R. 404, subpt. P., App. 2. Where the claimant's characteristics fit the factors of a specific rule in these guidelines or grids, the rule prescribes a result as to whether the claimant is disabled. *Channel,* 747 F.2d at 578.

"[T]he grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule." *Channel,* 747 F.2d at 579. The "exact fit" requirement plays a significant role in assessing residual functional capacity (RFC). A claimant is placed in one of five RFC categories depending on his "capacity for work activity on a regular and continuing basis." *Channel,* 747 F.2d at 579, [quoting App. 2, § 404.1545(b); App. 2, § 200.00(c) ]. Importantly, "a claimant must be able to perform the *full range* of such work on a daily basis in order to be placed in a particular RFC category." *Turner,* 754 F.2d at 328, (quoting *Channel,* 747 F.2d at 579–80), (emphasis in original).

As the RFC categories in the grids are based only on impairments in physical exertion and strength, the grids may not be applicable to cases where nonexertional limitations are also present. *Channel,* 747 F.2d at 580. Nonexertional limitations may include: skin impairments; impairments of vision, hearing, and other senses; postural and manipulative limitations; inability to comprehend and to respond appropriately to instructions, supervision, and co-workers; psychiatric disorders; chronic alcoholism; dizziness; and pain. *Channel,* 747 F.2d at 580; *see Byron v. Heckler,* 742 F.2d 1232 (10th Cir. 1984) (pain); and *Teter v. Heckler,* 775 F.2d 1104, 1106–07 (10th Cir.1985) (pain, psychological disorder, drug addiction), *see also* 20 C.F.R. 404.1545(c, d). The impact of a nonexertional impairment obviously varies according to a claimant's individual circumstances. Consequently, where evidence of nonexertional limitations exists, the grids cannot be conclusively applied until the ad-

ministrative law judge (ALJ) makes a specific findings, supported by substantial evidence, that claimant could perform the full range of work on a daily basis within the particular RFC category despite his nonexertional impairment. *Turner,* 754 F.2d at 328–29; *Channel,* 747 F.2d at 579–80.

The evidence in this case consists of numerous medical records of operations, treatment and opinions, and plaintiff's testimony. Plaintiff was born August 31, 1938, and was a graduate of high school. He had farmed from 1955 to 1978 when he had a second back operation which left him unable to perform the necessary farm tasks. Plaintiff has been unemployed since the second operation.

Upon the evidence of the entire record, the ALJ found:

1. The claimant met the disability insured status requirements of the Act on October 10, 1978, the date the claimant stated he became unable to work, and continued to meet them through December 31, 1982, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since October 10, 1978.

3. The medical evidence establishes that the claimant has degenerative cervical arthritis, seizure disorder and obsessive-compulsive disorder, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's allegation that his impairments produce pain and other symptoms of sufficient severity to prevent all sustained work activity is not credible.

5. The claimant has the residual functional capacity to perform the physical exertion and non-exertional requirements of work except for his arthritis which probably prevents medium to heavy exertion, and his seizure disorder which would probably rule out work around his seizure disorder which would probably rule out work around unprotected heights or dangerous machinery (20 CFR 404.1545).

6. The claimant is unable to perform his past relevant work as a farmer and laborer, because of exertional demands.

7. The claimant's residual functional capacity for the full range of light work is slightly reduced by the non-exertional limitations described in paragraph 5.

8. The claimant is 44 years old, which is defined as a younger individual (20 CFR 404.1563).

9. The claimant is a high school graduate (20 CFR 404.1564).

10. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work (20 CFR 404.-1568).

11. Based on an exertional capacity for light, and the claimant's age, education, and work experience, section 404.-1569 and Rule 202.21, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of the "not disabled."

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time prior to December 30, 1982 or through the date of this decision (20 CFR 404.1520(f)).

Claimant contends the ALJ improperly construed and overlooked pertinent evidence in finding that plaintiff was not disabled and in applying the grids.

■ All of claimant's impairments, singly and in combination, must be considered. *Hawkins v. Heckler,* 600 F.Supp. 832, 837 (D.Kan.1985). The ALJ's order reflects little, if any, consideration of the cumulative effects of plaintiff's physical disability pain, epilepsy, effect of medication for epilepsy, and personality disorder.

On October 10, 1978, Dr. Lance performed a spinal fusion L–4 to the sacrum on plaintiff. In 1979, plaintiff's treating physician, Dr. Stockwell, gave a poor diagnosis indicating a lifetime of lumbar instability and low back pain. On referral to another physician, plaintiff was diagnosed as suffering from a "total body pain" syndrome with a recommendation for treatment at a pain clinic. Several months later

another physician evaluated plaintiff's chronic back problems, and noted:

> Currently, he has persistent back pain in the low lumbar area with radiation to his right gluteal area right thigh and associated burning in the anterior portion of the right thigh and some numbness on the lateral aspect of the right thigh. This pain is present at all times, worse on occasions, particularly with activity, and relieved somewhat by rest, but as mentioned above, still present.

(R 230). This consulting physician also recommended treatment at a chronic pain clinic.

Plaintiff was admitted on January 6, 1980, to the Pain Unit at St. Joseph Medical Center in Wichita, Kansas, and was dismissed February 15, 1980. Dr. Siegel's initial impression of plaintiff included "chronic low back strain with severe low back contractures as well as hamstring tightness." The discharge diagnoses were chronic back pain, arteriovenous malformation in the head, and borderline personality. At the time of discharge, objective evidence of the chronic pain consisted of spondylolithesis of L5 and S1, lipping of C5, mild kyphosis, minimal lipping of the lower third of the dorsal spine, and marked lumbar lordotic curve with old spinal fusion at L5 and S1.

In July 1981, plaintiff was seen by Dr. Harvie for back pain while playing tennis. Plaintiff was "very sore" at two points in his body, and Dr. Harvie believed surgery would be beneficial. In 1983, plaintiff was admitted to Halstead Hospital for a diagnostic evaluation which revealed a possible nonunion of a previous fusion at L4 to S1 and severe degenerative arthritis at C4–5 and C5–6. The orthopedic surgeon advised against additional surgery because a grand mal seizure could complicate the convalescent period.

Plaintiff testified that sitting caused him pain and stretching would be necessary every 30 minutes to a couple of hours. Plaintiff has fallen because of his right leg being weak from pain.

The ALJ found claimant's testimony on the severity of his pain to be not credible.

The ALJ made his conclusion upon three factors: (1) no appearance of severe pain or distress at the hearing: (2) ability to play tennis in June of 1981; and (3) Dr. Stockwell's testimony that plaintiff was not totally disabled physically.

■ There must be a basis in the record for the ALJ to disbelieve a witness, and the ALJ must make specific findings and state reasons for disbelieving plaintiff's subjective testimony. *See Cole v. Heckler,* 616 F.Supp. 871, 874 (D.Kan. 1984); *Claassen v. Heckler,* 600 F.Supp. at 1511. Subjective complaints of pain may not be ignored only because no objective evidence exists to support them. *Byron,* 742 F.2d at 1235. A claimant's subjective complaint of pain is by itself insufficient to establish disability. *Brown v. Bowen,* 801 F.2d 361, 363 (10th Cir.1986). "[S]ubjective pain need not be shown to have an objective physical origin to be disabling." *Turner,* 754 F.2d at 330. Where claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence. *Green v. Schweiker,* 749 F.2d 1066, 1068 (3d Cir.1984); *Hammerstone v. Heckler,* 635 F.Supp. 1089, 1093 (E.D.Pa.1986).

■ The ALJ's observations at the hearing constitute relevant, material and admissible evidence. Extensive reliance on observations is discouraged, as one court explained:

> [W]e cannot allow the dismissal of a claim for pain solely on the ALJ's observations at the hearing. This procedure amounts to the infamous and thoroughly discredited "sit and squirm" test. We do not imply that there was no evidence in the record from which the ALJ could not draw the inference for a lack of pain. However, the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation.

*Weaver v. Secretary of Health and Human Services,* 722 F.2d 310, 312 (6th Cir. 1983), *see Teter,* 775 F.2d at 1106. In the case at bar, the ALJ's observation is not sustained by other evidence. The evidence

is clear that plaintiff developed back pain while playing tennis and was very sore thereafter. Playing tennis once or intermittently and experiencing pain during and after the exercise is not inconsistent with plaintiff's complaints of chronic pain. *See Byron,* 742 F.2d at 1235.

Nor does Dr. Stockwell's opinion that plaintiff is "not totally disabled physically" controvert or question plaintiff's credibility regarding his pain. In using Dr. Stockwell's medical opinion in this fashion, the ALJ abstracted an isolated portion of the doctor's letter, which read in pertinent part:

"It is my impression that he is not totally disabled physically but has substantial physical difficulties. It is furthermore my impression that in addition to the substantial physical disability, this patient has developed over the past several years a progressive emotional disturbance that seems to incapacitate him, in his ability to cope with his physical illnesses and I believe would prevent him from being able to cope with any type of gainful employment."

(R. 438). Dr. Stockwell's opinion is consistent with plaintiff's complaints of pain; it suggests a psychological component to plaintiff's complaints. The Tenth Circuit has noted: "Complaints of pain cannot be dismissed as incredible merely because they stem in part from a psychological abnormality, so long as the abnormality is shown by 'medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques....' 42 U.S.C. § 423(d)(5)(A) (1985 Supp.)." *Teter,* 775 F.2d at 1106. The ALJ's reasons are inadequate for finding plaintiff's subjective complaints to be incredible.

During treatment in the pain unit, plaintiff underwent a psychological evaluation which revealed "a high level of distress which is interfering with his ability to function adequately." (Rec. 297) The diagnosis was a borderline personality disorder with a guarded prognosis. Dr. Stockwell has stated that plaintiff has considerable psychiatric problems and is unable to get along with others. Dr. Stockwell speculates the psychiatric overlay could be caused by the medication used to control the epileptic seizures and by the post-seizure reaction. A psychological evaluation in December of 1982 disclosed that plaintiff had an obsession-compulsive disorder. The psychologist further stated:

Often associated with this diagnosis are depression and anxiety. The course of this illness is usually chronic with waxing and waning of symptoms, and impairment is generally moderate to severe. In this individual's case, I feel the impairment is moderate and do feel that he could function in a work situation if he chose to do so. The main problems that most likely would handicap Jerry in the work world would be difficulty in interpersonal relationships and worrying too much about impractical matters.

(R. 403)

The ALJ did not consider plaintiff's personality disorder to be disabling alone. The ALJ again isolated a portion of Dr. Stockwell's medical opinion to find support for the conclusion of no disability. Dr. Stockwell has stated:

I have previously informed this patient, that for his own mental and physical well-being, he should work and be gainfully employed, however, he has not been able to assimilate this advice and put it into action. I believe that this has gone on for a number of years and now is in such a fixed mold that this patient is emotionally unable to be gainfully employed, unless some extraordinary change occurs or some extraordinary type of occupation appears on the horizon.

(R. 438). The significance of plaintiff's personality disorder is evident when it is considered in combination with plaintiff's physical disability, chronic back pain and epilepsy.

In 1968, plaintiff was diagnosed as having grand mal epilepsy caused by a left parietal arteriovenous malformation. As to the epilepsy, the ALJ discounted any impairment since "the seizures appear to be generally well controlled by medication, infrequent, and existing primarily at

night." Through heavy medication, plaintiff's epileptic seizures have been generally limited to two or three nocturnal grand mal seizures a month. Their frequency increases with excessive tiredness and stress. Besides physical injuries, the seizures have rendered plaintiff unable to function for two to three days thereafter. The heavy medication has the side effects of sedation, clouded senses, and behavioral changes. Plaintiff also testified to drowsiness and diminishment of eye sight.

Only Dr. Stockwell, plaintiff's treating physician, gave a disability opinion considering the cumulative effect of plaintiff's impairments, and he concluded that plaintiff could not engage in substantial gainful work. The opinion of the treating physician must be accorded great weight, and the reports of government consultative physicians are given little weight, particularly where based on one examination and where inconsistent with the reports of treating physicians. *Turner,* 754 F.2d at 329; *Holloway,* 607 F.Supp. at 74. Specific, legitimate reasons must be set forth for disregarding the opinion of claimant's treating physician. *Byron,* 742 F.2d at 1235. As previously discussed, the ALJ's reasons for disregarding the opinion of Dr. Stockwell are not supported by the record.

The ALJ's finding that plaintiff could perform the full range of light work on a sustained basis is not supported by substantial evidence. The effect of plaintiff's non-exertional limitations preclude any legitimate application of the grids. In fact, the only reasonable conclusion to be drawn from this record is that plaintiff is completely disabled by the cumulative effect of his physical disability, chronic back pain, obsessive/compulsive personality disorder, epilepsy and the medication required to control the grand mal seizures.

IT IS THEREFORE ORDERED that defendant's motion to affirm is denied and plaintiff's motion to reverse is granted. The case is remanded to the Secretary with directions to award plaintiff disability benefits as of December 30, 1982. *See Teter,*

775 F.2d at 1107; *Knipe,* 755 F.2d at 149 n. 18.