**Bobbie A. GREEN, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration,[1] Defendant.**

**No. 02–CV–753–J.**

United States District Court, N.D. Oklahoma.

May 15, 2003.

---

1. Effective November 9, 2001, pursuant to Fed.R.Civ.P. 25(d)(1), Jo Anne B. Barnhart, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Mark E Buchner, Tulsa, for Bobbie Green, plaintiff.

Wyn Dee Baker, United States Attorney, Tulsa, for Social Security Administration, Commissioner—Jo Anne B Barnhart, defendant.

## ORDER [2]

JOYNER, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[3] Plaintiff asserts the following errors on appeal: (1) The ALJ improperly evaluated the opinion of Plaintiff's treating physician, Ted Trimble, M.D.; (2) The ALJ improperly assessed Plaintiff's residual functional capacity ("RFC"), and the RFC finding is not supported by substantial evidence; (3) The ALJ erred in finding that Plaintiff can return to her past relevant work as a care giver, receptionist, purchasing secretary, laboratory technician, counselor, or packager; and (4) The ALJ improperly evaluated Plaintiff's credibility. The Court has meticulously examined the record and, for the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff testified at a hearing before the ALJ on July 13, 2001. [R. 43]. Plaintiff was born December 25, 1946, and was 54 years of age at the hearing. [R. 48]. Plaintiff's past relevant work experience includes work as a care giver at a day care, receptionist-purchasing agent, secretary for an insurance agent, laboratory technician for an ice cream plant, and counselor-packager at a weight loss clinic. [Pl. Br. at 1]. Plaintiff alleges disability since January 3, 1999. [Pl. Br. at 1]. At the time of the hearing before the ALJ, Plaintiff's educational attainments included a high school education and completion of one year of junior college. [R. 49]. Plaintiff is right-handed. [R. 49].

Plaintiff asserts that she is unable to work and suffers from a multitude of impairments, including chronic fatigue syndrome, fibromyalgia, narcolepsy, attention deficit disorder, bladder incontinence, depression, somatoform disorder, recurring blistering of the perianal area of her buttocks, and possible sleep apnea. [Pl. Br. at 2; R. 60, 275, 290, 293, 296].

Plaintiff underwent surgery for colon cancer in 1985. Plaintiff alleges that subsequent radiation treatment left her with residual radiation injuries of severe, recur-

---

**2.** This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

**3.** Administrative Law Judge Lantz McClain (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated November 28, 2001. [R. 27]. Plaintiff appealed the decision by the ALJ to the Appeals Council. On August 23, 2002, the Appeals Council denied Plaintiff's request for review. [R. 8–9].

ring blistering to the perianal area of her buttocks, which results in pain with prolonged sitting. [Pl. Br. at 1–2; R. 60, 275, 296]. Plaintiff was afflicted with Rocky Mountain Spotted Fever around 1990–1991. [R. 275, 290].

According to Plaintiff, she lives alone in a home. [R. 54]. Plaintiff temporarily moved in with her parents, but stated that she moved back to her own house because she was unable to get along with anyone. [R. 54]. She cooks convenient meals, such as frozen dinners or canned food. Plaintiff makes trips to the grocery store, but stated that she shops "fast" and sometimes needs her mother to go with her. [R. 58]. Plaintiff testified that she was prescribed Ritalin in order to help focus her attention and enable her to drive, [R. 54]. Plaintiff also stated that she sleeps all the time, throughout the day and night. [R. 55]. Plaintiff is often awakened by her bladder incontinence. [R. 55]. According to Plaintiff, she can sit for only 10 to 15 minutes at a time, stand for 10 minutes, and walk for about 5 minutes. [R. 57–58]. She testified that she spends approximately 6 hours of an 8–hour day lying down. [R. 63]. Plaintiff stated that she can lift no more than a gallon of milk. [R. 58]. In the past, Plaintiff enjoyed arts and crafts and painting, but states that she can no longer partake in these hobbies. [R. 57]. Plaintiff is a member of her church, which she tries to attend when she is able. [R. 57].

A Physical Residual Functional Capacity Assessment completed on August 30, 2000, with the primary diagnosis chronic back pain, noted that Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift/carry 25 pounds; stand and/or walk for a total of about 6 hours in an 8–hour day; sit (with normal breaks) for about 6 hours in an 8–hour day; and perform "unlimited"

push and/or pull controls. No manipulative, environmental, or visual limitations were established. The individual completing the assessment opined that Plaintiff can only occasionally stoop. [R. 188–93].

A Psychiatric Review Technique ("PRT") completed on August 30, 2000, by Dr. Smallwood, analyzed Plaintiff under 12.04 Affective Disorders, and opined that Plaintiff's Impairment was not severe. In describing Plaintiff's degree of functional limitations in the "B" criteria of the Listings, Dr. Smallwood noted that Plaintiff suffers "slight" restrictions in her activities of daily living; "slight" difficulties in maintaining social functioning; "seldom" experiences deficiencies of concentration, persistence, or pace; and has "never" had episodes of deterioration or decompensation in work or work-like settings. [R. 194–200].

A second PRT, covering the period of August 30, 2000 to November 21, 2000, analyzed Plaintiff under 12.04 Affective Disorders (depression, not otherwise specified) and opined that Plaintiff's impairment was not severe. Under the "B" criteria, the examiner noted that Plaintiff has "mild" restrictions in her activities of daily living; "mild" difficulties in maintaining social functioning; "mild" difficulties in maintaining concentration, persistence, or pace; and has had no repeated episodes of decompensation, each of extended duration. The examiner further stated that Plaintiff alleges memory loss and that her records show depression. The individual completing the PRT noted that Plaintiff receives treatment at Creoks Mental Health Center, and that Plaintiff "notes that her depression is not affecting her in 7/7/00." [R. 230–43].

On March 12, 2001, Dr. Trimble, Plaintiff's treating physician, noted that Plain-

tiff can sit for only 45 minutes total at one time; stand for 15 minutes; walk for 5 minutes; and that Plaintiff must lie down for a minimum of 30 minutes every hour due to fatigue and pain. Dr. Trimble opined that Plaintiff could sit for a total of 2 hours in an 8–hour day; stand for 30 minutes; and walk for 15 minutes. He further noted that, in an 8–hour period, Plaintiff must lie down for 1 hour to 3 hours at a time and 1 hour to 6 hours total during her best 8 hours. Dr. Trimble determined that Plaintiff can only rarely lift or carry weights of 1 to 9 pounds and never lift anything exceeding 9 pounds. He further found that Plaintiff can use her left and right hands for simple grasping and pushing and pulling of controls, but not for fine manipulation. Plaintiff is able to use her feet for repetitive movements in pushing/pulling of leg controls. Plaintiff is unable to squat or climb, but can occasion- ally bend, crawl, or reach. Dr. Trimble placed total restrictions on activities involving unprotected heights, exposure to marked changes in temperature and humidity, and exposure to dust, fumes, and gases. He found Plaintiff to be moderately limited in her ability to be around moving machinery, and mildly limited in driving automotive equipment. [R. 286–89].

Plaintiff underwent a neuropsychological evaluation with John Hickman, Ph.D., on May 5, 2001. Dr. Hickman found that Plaintiff reported "severe" degrees of depression and anxiety and has "little insight into her psychological difficulties and is not likely to seek appropriate psychiatric treating or counseling." [R. 300]. He opined that Plaintiff has a histrionic per-

sonality disorder and is likely to "present with somatic complaints of a bizarre nature" and exhibit attention-seeking behavior. Dr. Hickman noted that individuals with personality functions similar to Plaintiff are easily distracted and confused and report concentration and memory difficulties. Furthermore, individuals with similar personality functions "feel socially inept and inadequate" and have "poor work histories and nomadic lifestyles." [R. 300].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. § 404.1520. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[4]

The Commissioner's disability determinations are reviewed to determine: (1) if the correct legal principles have been fol-

---

4. Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 1521. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impair-

lowed; and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir.1988); *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo. Sisco v. United States Dep't of Health & Human Services,* 10 F.3d 739, 741 (10th Cir.1993). The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir.2000); *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams,* 844 F.2d at 750; *Holloway v. Heckler,* 607 F.Supp. 71, 72 (D.Kan.1985).

"The finding of the Secretary[5] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Williams,* 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales,* 402 U.S. at 401, 91 S.Ct. 1420. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams,* 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass,* 43 F.3d at 1395.

### III. DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found: (1) Plaintiff has not engaged in any substantial gainful activity since her alleged onset of disability date of January 3, 1999; (2) Plaintiff is impaired by a pain disorder, which is "severe" enough to reduce her ability to work; (3)

---

ment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal to or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Williams v. Bowen,* 844 F.2d 748, 750–51 (10th Cir. 1988).

5. Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103–296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

Plaintiff's impairment(s) neither meet nor equal the criteria of any impairment in the Listing of Impairments; (4) Plaintiff maintains the RFC to perform a wide range of light work; and (5) Plaintiff's impairment(s) and RFC do not preclude her from performing her past relevant work as a care giver, receptionist, purchasing, secretary, laboratory technician, counselor, or packager. Even at the sedentary level, Plaintiff could still perform her past relevant work as a packager as she performed it. Thus, the ALJ concluded at Step Four that Plaintiff is not disabled.

## IV. REVIEW

EVALUATION OF TREATING PHYSICIAN'S OPINION

Plaintiff asserts that the ALJ improperly weighed evidence from Plaintiff's treating physician, Dr. Ted Trimble. Specifically, Plaintiff contends that the ALJ failed to give appropriate weight to Dr. Trimble's limitations set forth in his March 12, 2001, "Medical Assessment of Ability to do Work–Related Physical Activities" based on Plaintiff's diagnosis of chronic pain and fibromyalgia. [R. 287–94]. Defendant argues that the ALJ properly weighed the medical evidence and gave recognized reasons for discounting Dr. Trimble's report. For the reasons discussed below, the Court finds that the ALJ erred in his evaluation of Dr. Trimble's assessment, and the ALJ's decision is not supported by substantial evidence in the record.

In social security disability cases, a treating physician may proffer an opinion about the nature and severity of claimant's impairments and the Commissioner will accord "controlling weight to that type of opinion if it is well supported by clinical and laboratory diagnostic techniques and if

it is not inconsistent with other substantial evidence in the record." *Castellano v. Sec'y of Health & Human Services*, 26 F.3d 1027, 1029 (10th Cir.1994); *see also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir.2001); 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2). A treating physician may opine that a claimant is totally disabled, but "[t]hat opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Id.*

■ A treating physician's opinion is entitled to great weight. *See Williams*, 844 F.2d at 757–58 (more weight will be given to evidence from a treating physician than to evidence from a consulting physician appointed by the Secretary or a physician who merely reviews medical records without examining the claimant); *Turner v. Heckler*, 754 F.2d 326, 329 (10th Cir.1985). However, a treating physician's opinion may be rejected "if it is brief, conclusory, and unsupported by medical evidence." *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*." *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir.2002) (emphasis in original).

If an ALJ disregards a treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir.1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

The fact that Dr. Trimble is Plaintiff's treating physician who proffered a medical opinion as to Plaintiff's limitations is undisputed. Rather, the issue is whether the ALJ properly discounted Dr. Trimble's opinion in determining that Plaintiff can perform a wide range of light work, return to several of her past jobs, and, thus, is not disabled. The ALJ concluded that Plaintiff's impairment of a "pain disorder" is expected to interfere, more than minimally, with her ability to perform work-related activities and, as such, constitutes a "severe" impairment. [R. 21]. However, the ALJ discounted the impact of Plaintiff's diagnosed impairments of fibromyalgia and chronic fatigue syndrome on her physical limitations established by Dr. Trimble.

The record illustrates that Dr. Trimble has acted in the capacity of Plaintiff's primary care physician since 1996. Dr. Trimble diagnosed Plaintiff with fibromyalgia syndrome, chronic fatigue syndrome, narcolepsy, depression, attention deficit disorder, and chromic eruption of blisters in the sacral area. [R. 246, 290, 292–93, 296, 309]. In his March 12, 2001 Assessment, Dr. Trimble noted that Plaintiff can sit for only 45 minutes at a time, for a total of 2 hours in an 8–hour workday; stand for 15 minutes at a time, for a total of 30 minutes; and walk for 5 minutes at a time, for a total of 15 minutes. He additionally limited Plaintiff to lifting and carrying under 9 pounds, and restricted her from squatting or climbing. Dr. Trimble noted that Plaintiff's pain and fatigue require her to lie down for 30 minutes every hour. [R. 287–94].

In his decision, the ALJ rejected Dr. Trimble's opinion, stating that it relied on Plaintiff's statements, which the ALJ found to have diminished credibility. The ALJ also argued that no significant objective basis existed to support Plaintiff's back complaints. [R. 24]. The ALJ further speculated that Dr. Trimble's assessment may have changed had he seen the report of Dr. Hickman, who had performed a neuropsychological evaluation of Plaintiff on May 5, 2001. In his report, Dr. Hickman opined that Plaintiff suffers from a histrionic personality disorder. Dr. Hickman noted that Plaintiff reported "severe" degrees of depression and anxiety and has "little insight into her psychological difficulties and is not likely to seek appropriate psychiatric treating or counseling." [R. 300]. He stated that Plaintiff is likely to "present with somatic complaints of a bizarre nature," and that individuals with personality functions similar to Plaintiff exhibit attention-seeking behavior, are easily distracted and confused, and report concentration and memory difficulties. Furthermore, individuals with similar personality functions "feel socially inept and inadequate" and have "poor work histories and nomadic lifestyles." [R. 300].

In his decision, the ALJ essentially used Dr. Hickman's psychological report to de-

bunk the opinion of Plaintiff's long-standing treating physician, Dr. Trimble, regarding Plaintiff's physical limitations. The ALJ opined that, had Dr. Trimble seen Dr. Hickman's report, his assessment might have changed. The ALJ's speculation centered on Dr. Hickman's finding that Plaintiff could be focusing her emotional discomfort on somatic concerns, which make her complaints sound more severe. [R. 24].

■ The Court finds that the ALJ's speculation as to what Dr. Trimble *might have* done regarding his *physical* assessment of Plaintiff in light of Dr. Hickman's *psychological* report was improper and unpersuasive. Plaintiff points out that Dr. Trimble had an opportunity to review Dr. Hickman's findings before making his June 5, 2001 treatment note. Nevertheless, Dr. Trimble made no attempt to revise his previous assessment at that time. [R. 308]. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*" See *McGoffin,* 288 F.3d at 1252 (emphasis in original). If the ALJ had any question as to whether Dr. Trimble would have been persuaded to change his physical assessment findings in light of Dr. Hickman's report, then the ALJ was required to recontact Dr. Trimble and develop the record further. *See McGoffin,* 288 F.3d at 1252 ("[I]f the ALJ believed that the matter was open to question, he had an obligation under the applicable regulations to *obtain additional information from* [the doctor] before rejecting the report outright."); *see also* S.S.R. 96–5p; 20 C.F.R. § 404.1512(e)(1).

■ As previously discussed, a treating physician's opinion may be rejected "if it is brief, conclusory, and unsupported by medical evidence." *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987). Nothing in the record reveals that Dr. Trimble's assessment is brief, conclusory, or unsupported by medical evidence. Additionally, where an ALJ disregards a treating physician's opinion, he is required to set forth "specific, legitimate reasons" for doing so. *Byron,* 742 F.2d at 1235. In *Goatcher v. United States Dep't of Health & Human Services,* 52 F.3d 288 (10th Cir.1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6).

The Court finds that the ALJ's decision to reject Dr. Trimble's assessment does not evidence consideration of the factors discussed in *Goatcher.* In fact, many of the above factors weigh in favor of according Dr. Trimble's assessment controlling weight. For example, Dr. Trimble has a lengthy history of treating Plaintiff as her primary care physician, dating back to 1996. Dr. Trimble's diagnoses of Plaintiff's impairments are consistent with her

continuous complaints of pain, fatigue, and muscle tenderness illustrated in the record and by her testimony at the hearing. Chronic fatigue syndrome and fibromyalgia syndrome in particular are not easily quantifiable conditions that subject themselves to "dipstick" laboratory tests. *See Sisco v. United States Dep't of Health & Human Services,* 10 F.3d 739 (10th Cir. 1993). In fact, diagnoses of fibromyalgia and chronic fatigue syndrome often rely heavily on an individual's subjective complaints and manifest in waxing and waning symptoms.

The ALJ's discounting of Dr. Trimble's assessment based on a lack of "objective" medical evidence substantiating pain in trigger points essentially equated to an impermissible substitution of the ALJ's own "medical expertise" for that of Plaintiff's treating physician. *See Winfrey,* 92 F.3d at 1022. Contrary to the ALJ's assertions, Dr. Trimble's records illustrate longitudinal contact with Plaintiff documenting Plaintiff's symptoms of fibromyalgia, including fatigue, muscle pain, and trigger points. [R. 246, 248–49, 256, 267, 290]. The ALJ's imposition of his own medical opinion over Dr. Trimble's, combined with the ALJ's speculation on the effect of Dr. Hickman's psychological report on Dr. Trimble's physical assessment, constitutes reversible error. *See McGoffin,* 288 F.3d at 1252 ("Although we may not second-guess an ALJ's credibility judgments, such judgment[s] by themselves 'do not carry the day and override the medical opinion of a treating physician that is supported by the record.'"). The ALJ's failure to accord controlling weight to Dr. Trimble's assessment in the absence of providing specific, legitimate reasons is not supported by substantial evidence.

The Court finds that the ALJ improperly evaluated the opinion of Plaintiff's treating physician, improperly substituted his own medical opinion, and failed to provide specific and legitimate reasons for discounting Dr. Trimble's physical assessment. Accordingly, the Court **REVERSES AND REMANDS** the Commissioner's decision for further proceedings consistent with this opinion.

IT IS SO ORDERED.