Annette **GAYMON**, Plaintiff,

v.

Louis W. **SULLIVAN**, M.D., Secretary of Health and Human Services, Defendant.

No. CV 90–0160.

United States District Court, E.D. New York.

March 20, 1991.

Klein, Wagner & Morris (Richard P. Morris, of counsel), New York City, for plaintiff.

Andrew J. Maloney, U.S. Atty. (Bruce H. Nims, Asst. U.S. Atty., of counsel), Brooklyn, N.Y., for defendant.

### ORDER

NICKERSON, District Judge.

Plaintiff brought this action to review a final determination of defendant Secretary of Health and Human Services denying plaintiff's claim for a period of disability, disability insurance benefits, and Supplemental Security Income benefits under the

Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff's present application for benefits was made on February 26, 1988 and claimed disability commencing January 30, 1986 due to back trouble and hypertension. The Administrative Law Judge found plaintiff not disabled, and the Appeals Council affirmed. This action followed.

The Administrative Law Judge made the following formal findings.

Plaintiff met and continues to meet the special earnings requirements. She has not engaged in substantial gainful activity since January 30, 1986. The medical evidence establishes that she has low back syndrome with radiculitis, possible herniated disc, and essential hypertension, but does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the regulations. Her complaints of severe, constant, debilitating back pain are neither credible nor persuasive. Although unable to perform her past relevant work as a home attendant, she has the residual functional capacity for light work, that is, to perform the physical exertion requirements of work except for lifting and carrying over 20 pounds or frequent bending. She, 51 years old, has a high school education, and thus the issue of transferability of work skills is not material. The regulations direct a conclusion that considering plaintiff's residual functional capacity, age, education, and work experience, she was not disabled.

Plaintiff was treated by several doctors over a considerable period of time.

Plaintiff came under the care of Dr. Theodore Brescia, a chiropractor, on March 19, 1987. He in turn referred her to Dr. Mohammed K. Nour, an orthopedic surgeon, who treated her from June 9, 1987 to January 28, 1988. He diagnosed a chronic cervical radiculopathy and chronic lumbosacral syndrome, and suggested chiropractic treatment.

Dr. Brescia then continued the treatment. He made a detailed report on January 14, 1989. It contains a description of plaintiff's medical history, the doctor's examinations, the x-ray, EMG, CAT scan and orthopedic examinations, as well as Dr. Brescia's treatment and prognosis. In substance the report states the following.

On January 15, 1986 plaintiff, then 46 years old and working as a home attendant, turned a heavy patient in bed and felt a severe pain in her neck and lower back. As the days continued the pain became increasingly more severe, radiating down the right arm and down both legs so that she had to discontinue work. She saw several doctors at Long Island Hospital and New York Hospital, and as the pain became increasingly more severe she came on March 19, 1987 to Dr. Brescia for a chiropractic examination and treatment.

She complained of low back pain, with frequent headaches and tension, even exhibiting an expression of pain on her face. She had to alternate between sitting and standing positions due to the pain. She stood in an antalgic position of forward flexion with limping gait, favoring her right leg and walking very slowly. She had great difficulty getting prone on the examination table. The musculature of the cervical and lumbar spine was in a marked spasm, both visible and palpable.

The range of motion of the cervical spine, normal flexion extension, was 15 degrees, lateral bending right 15 degrees, left 25 degrees. There was slight hyposthesia over C7 dermatone on the right. The Lasegue test was positive, and the straight leg raising test was restricted on the right, in the sitting position at 40 percent on the right and 70 percent on the left. In the supine position straight leg raising was 50 percent on the right and 70 percent on the left. The Lasegue sign was positive on the right at 20 degrees and on the left at 10 degrees.

The patella reflexes were slow bilaterally, as was the right ankle reflex. Heel to buttock femoral stretch tests were bilaterally restricted with extreme tightness of the hamstring muscles bilaterally. Coughing produced marked pain in the lumbar spine and down the back of the right leg. Lateral bending from left to right and flex-

ion and extension of the lumbar spine produced severe pain, with marked restriction of movement in all directions.

She was unable to do any bending, kneeling, or crawling, and was unable to walk on her heels or toes. There was always a sensation of pins and needles down the lower extremity into the toes. She was unable to carry weight of more than 10 pounds and was in severe pain going up and down stairs. Deep and superficial tests with pinwheel and brush revealed loss of sensory perception along the C4–C7 dermatones down the right arm into the ring and small finger. There was a loss of sensory perception along the L5–S1 dermatones down the right leg into the toes.

Motor strength of the right leg was about two-fifths. Finger pressure over the area C4–C7 and L1–S1 produced severe pain in the cervical and lumbar spine within increasing pain down the right arm into the ring and small finger and right lower extremity into the toes.

Dr. Brescia referred her to Dr. Amir Borzouye on March 20, 1987. That doctor's impression was malalignment of the cervical spine at C4–C7 displaced to the right with loss of the cervical lordosis and the presence of kyphosis in the neutral position. He also found marked restriction of motility noted in hyperextension. In hyperflexion of the cervical spine there was malalignment of C4–C5 indicative of instability. There was a scoliosis of the dorsal spine with convexity to the left. There was off-centering of T4–T11 with displacement to the right, and narrowing of the disc spaces of T11 and T12. Viewing of the lumbar spine revealed scoliosis with convexity to the right and off-centering of L2–L5 displaced to the left. The disc space at L1–L2–L3–L4 were narrowed.

Dr. Brescia also referred plaintiff to Dr. Henry Fleck on May 7, 1987. The conclusion of his examination was positive for a bilateral L5–S1 radiculopathy on the lower right extremity.

Dr. Brescia also referred plaintiff to Dr. Miklos Weinberger for a computerized tomography of the lumbosacral spine. His findings were herniation of the L4–L5 intervertebral disc.

Dr. Brescia also made the reference referred to above to Dr. Nour.

Dr. Brescia's treatment was three times a week, including manipulation of the spine, ultrasound, EMS treatment, TENS treatment, heat treatment, cervical and lumbar spine traction. He also advised her to use some hydrotherapy and a cane. She was also fitted for and instructed to use a lumbosacral support.

Dr. Brescia's prognosis was as follows. "The prognosis for this patient is extremely poor. The patient has a permanent disability due to the injury related on January 15, 1986. The usual course for such a condition of such continued persistence of symptoms and signs is a progressive down hill course. The patient will have extreme difficulty in doing any work which will require the use of the areas injured. I suggest the patient continues medical and chiropractic treatment as required. The patient is totally disabled from participating in any gainful work activity."

The Administrative Law Judge did not consider Dr. Brescia as a "treating physician" because he was a chiropractor and not a physician, osteopath or psychologist. He therefore found Dr. Brescia's opinion to carry "limited weight in the determination of disability."

This court holds, as did the court in *Santiago v. Bowen,* 715 F.Supp. 614, 615 (S.D. N.Y.1989), that a treating chiropractor's opinion as to the diagnosis and nature and degree of impairment arising from a condition within the chiropractor's field of expertise should ordinarily have a binding effect under the treating physician rule in the absence of substantial evidence to the contrary. At the very least the opinion is entitled to "significant weight." *Poole v. Railroad Retirement Board,* 905 F.2d 654, 662 (2d Cir.1990).

Application of the treating doctor rule in this case requires reversal of the defendant's decision.

Plaintiff is granted judgment on the pleadings, and the matter is remanded to

defendant for calculation and disbursement of benefits.