**Virginia M. LEGGITT, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 91 N 544.**

United States District Court, D. Colorado.

Oct. 2, 1992.

Order on Motion for Reconsideration Feb. 8, 1993.

Steven U. Mullens, Colorado Springs, CO.

Kathleen L. Torres, Asst. U.S. Atty., for defendant.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

Plaintiff Virginia M. Leggitt is a 52-year-old woman with an eighth grade education. Her work history is limited to labor-intensive jobs, including her last job at a ceramics factory which she left after seriously injuring her lower back. After a hearing, Leggitt's application for benefits was denied by Administrative Law Judge ("ALJ") Fredrick Strothman, who found that although Leggitt had a severe impairment, her complaints of pain were exaggerated and she could perform "light" work. Leggitt appealed that decision, and the Appeals Council affirmed the ALJ's findings on February 11, 1991, thus making it a final decision of defendant.

The matter is now before the court on Leggitt's appeal under 42 U.S.C.A. § 405(g) (West 1991) of a final decision of defendant denying disability benefits. The primary issue is whether the findings of the ALJ are substantially supported by the evidence, or whether the ALJ (1) failed to assess accurately Leggitt's residual functional capacity by disregarding significant medical evidence and pain testimony and (2) completely discounted the opinion and findings of Leggitt's treating chiropractor. I conclude that defendant, through his designate, ALJ Strothman, erred in (1) determining that Leggitt had the capacity for light work; (2) not according proper weight to the opinions of Leggitt's treating chiropractor; and (3) improperly disregarding Leggitt's accounts of pain. I therefore reverse and remand for determination of benefits.

## FACTS

Leggitt first applied for disability benefits in February 1987 after seriously injuring her lower back at work in March 1985. That application was denied after reconsideration in July 1987. *Transcript of Record on Appeal ("Record")* at 102. In July 1988, she again applied for benefits. *Record* at 105. She complained that her con-

stant pain had increased so that she could no longer take care of all the housework and yard work, was sleeping only four hours a night, and had lost 10 pounds. *Record* at 154–55. The continued pain she experienced was considered "consistent with medical findings," *Record* at 125, but her application was denied. Her request for reconsideration was denied, and she requested a hearing. *Record* at 135–36, 144.

The hearing was held before ALJ Strothman on September 11, 1989. The record before the ALJ showed that Leggitt suffered from severe back and leg pain as a result of her back injury. A series of x-rays in 1985 taken by Leggitt's treating chiropractor, Dr. Sutton, showed disc degeneration in Leggitt's cervical and lower lumbar spinal areas. In the neck area, the x-rays showed a "loss of the normal cervical lordotic curvature involving C5, C6, C7 with subsequent jamming of the posterior articulating facets. There also appears to be a subluxation complex of the C4, C5, C6 and C7 motor units." *Record* at 203. A subluxation is a dislocation or movement apart from the normal contact between the joint surfaces. Stedman's Medical Dictionary 1494 (25th ed. 1990) [hereinafter called "Stedman's"]. Dr. Sutton also noticed that her left shoulder was lower than the right, causing a tightening of the right shoulder muscle. *Record* at 204. His diagnosis was a traumatic injury to her lower spine with "radicular sciatic neuralgia complicated by thinning of disc spaces." *Id.* There was also compensatory cervical sprain/strain resulting in radiating pain to the right upper shoulder muscle and shoulder blade area. *Id.* In April 1986, she was diagnosed with probable L4–L5 radiculopathy, and decreased sensation in her right side. *Record* at 161–62. Radiculopathy is a disease of the spinal nerve roots. Stedman's at 1308. After chemonucleolysis of a disc in her lumbar spine in May 1986, her leg pain was temporarily resolved and her back pain was reduced. *Record* at 178. Within a few months, however, her pain in both her back and legs returned to their previous intensity. *Record* at 189. A scan

done in September 1986 showed degenerative changes of her lower spine, significantly different than earlier scans. *Record* at 191. As a result of her injury, Leggitt was told not to return to her previous work. *Record* at 246 (recommendation of Dr. Noblett). Despite these progressively degenerative changes, and despite Leggitt's continued complaints of pain, Dr. Crosson, the physician retained by defendant for a consultative examination, *see* 20 C.F.R. § 404.1517 (1991), found in June 1987 that Leggitt had no significant problems and was capable of doing any kind of work for which she was qualified, including apparently, heavy physical labor. *Record* at 200–01.

Leggitt's pain in her back and upper body continued over the next year and in May 1988, she was admitted to an intensive, 15–day treatment program for pain management. *Record* at 205, 214. She was hospitalized during the week and went home only on the weekends. *Record* at 59. On admission, Dr. Davis, the director of the pain program, noticed a decreased cervical range of motion, several trigger points and muscular tenderness in her neck. *Record* at 212. She also had pain and a 75% decrease in lumbar mobility on extension of her back. *Id.* Other rotation and bending movements were decreased 25%. *Id.* She was also diagnosed as having mild fibrositis syndrome with a sleep disorder. *Record* at 213. Fibrositis is a term denoting aching, soreness or stiffness and believed to be due to a sleep disturbance preventing normal muscle relaxation. Stedman's at 584. Although Leggitt complained of upper body pain, it does not appear that any x-rays were taken of the cervical or thoracic spine and she was treated only with biofeedback. *Record* at 220. During later examinations there, doctors noticed ptosis (a drooping eyelid) and an enlarged thymus gland. These symptoms led the physicians to suspect that Leggitt had a serious disorder called myasthenia gravis and she was told to have a MRI performed. *Record* at 206, 208, 216, 217, 228, 250, 254. Myasthenia gravis is a chronic progressive disease causing muscular weakness and exhaustion. It has a predilection for eye and other cranial (face, lips, tongue, throat, and neck) muscles, but can affect any muscle of the body. It has a tendency to fluctuate in severity. Stedman's at 1009; Dorland's Illustrated Medical Dictionary 856 (26th ed. 1985); *Restighini v. Bowen,* No. 84 Civ. 4047 (RWS), 1986 WL 8308, at *1 (S.D.N.Y. July 22, 1986), citing Cecil, Textbook of Medicine, 15th ed., 1979. Paralysis of the muscles affected can result. *Ward v. Schweiker,* 686 F.2d 762, 763 (9th Cir.1982). As of the date of the hearing, Leggitt had not undergone a MRI because of a lack of medical insurance. *Record* at 249, 250.

Leggitt was a willing participant in the pain clinic program. Upon discharge, Dr. Davis concluded that she had "improved very nicely in strength, endurance, and mobility," *Record* at 206, and had "a very nice improvement in her functional level." *Record* at 207. With medication, Leggitt's sleep patterns were found to have normalized. *Record* at 206. Dr. Davis found, however, that Leggitt's work restrictions (*Record* at 229) were permanent and she could not return to her previous work. *Record* at 207. As noted above, Dr. Davis was also concerned that Leggitt may have myasthenia gravis and a possible thymoma (tumor of the thymus gland). *Record* at 228.

Dr. Davis saw Leggitt again in July 1988. Her sleep continued to be good with medication. *Record* at 227. Leggitt indicated that she still had pain, but was managing it with Excedrin and by seeing her chiropractor. She told Dr. Davis that she was "anxious to get on with her vocation." *Id.* Between July 1988 and January 1989, Leggitt continued to see her chiropractor, Dr. Sutton. In January 1989, Dr. Davis reported that Leggitt was not on "any medications," but that she still had pain at the same level as before. *Record* at 249. She indicated, however, that she was determined to cope with it and "go on with her life." *Id.*

In June 1989, Leggitt attempted to return to work. She obtained a position as a glass cleaner through a rehabilitation program. *Record* at 238, 240. Leggitt testified that this was the only job the rehabili-

tation counselor could find for her. *Record* at 41. As a result of the physical activity at work, her pain dramatically increased and so did her visits to Dr. Sutton. Treatment by Dr. Sutton increased from once every two to three weeks to two or three visits per week. *Record* at 238, 240. Throughout July and August 1989, Leggitt saw Dr. Sutton for intermittent swelling and pain in her back, legs and arm; limited range of motion; muscle spasms; headaches; and paresthesia (tingling or other abnormal sensation), weakness, and pain in her right hand and arm. *Record* at 236–37. Dr. Sutton suspected carpal tunnel syndrome in her right hand. *Record* at 238–39. She also experienced vertigo at work and severe aching, stiffness, and soreness from the increased activity. *Record* at 237. She also complained of constant shoulder pain which radiated down her arm. *Id.* Dr. Sutton's treatment included spinal manipulation, EMS (electromuscle stimulation) treatment, and hot packs. *Record* at 236–37. Eventually, Dr. Sutton recommended that Leggitt quit her job to avoid irreversibly aggravating her condition. *Record* at 238, 240. In September 1989, Dr. Sutton opined that because of the dramatic worsening of Leggitt's condition while working, she was not presently employable. *Record* at 239.

Leggitt testified at the hearing that she continues to have pain in her back, leg, shoulder, wrist and hands. *Record* at 44–45. She indicated that pain can occur even if she is not active, and the pain had become worse in her hands and right wrist. *Id.* She said that a lot of movement of her hands causes her hands and fingers to swell, and her wrists to weaken. *Record* at 49. To control the swelling, she uses ice several hours a day. *Id.* She must lay down and rest at periodic intervals during the day. *Record* at 49–50. She has used a back brace for three years. *Record* at 53–54. She estimated that she could walk probably one block before she would have to stop and rest. *Record* at 45. She said she could sit or stand about 30–45 minutes before she would have to change position. *Record* at 45, 52. She indicated that the most she could lift is 20 pounds. *Record* at 52–53. Leggitt testified that she stopped taking prescription Motrin because she could not afford it, but that she continues to take extra-strength Excedrin for the pain. *Record* at 43, 49. She drove 30 miles to the hearing, but noted that she cannot tolerate long trips. *Record* at 48. Leggitt testified that she feels depressed and cries often, but she is not seeking treatment for depression. *Record* at 50. Her hobby before the accident involved horses, but she had to give that up because of the pain. *Record* at 58, 212. She can still do a little housework, but must stop when the pain gets too bad. *Record* at 60. She has trouble sleeping. *Record* at 50.

## THE SECRETARY'S DECISION

 Under the Social Security Act, certain persons can receive disability benefits if they are "disabled" or unable "to engage in any substantial gainful activity...." 42 U.S.C.A. § 423(d)(1)(A) (West 1991) and 42 U.S.C.A. § 1382c(a)(3)(A) (West 1992). In proving her disability, a claimant must make a prima facie case showing that she is unable to return to prior work she has performed. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988). Once the claimant meets this burden, it is up to defendant to show that the claimant is able to do other work activities and that there is a significant number of jobs in the national economy that the claimant could perform. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir.1987).

Defendant has developed a five-step process for evaluating disability claims. *See* 20 C.F.R. §§ 416.920, 404.1520 (1991). This procedure is well-established and will not be repeated here. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir.1988). The claimant bears the burden of proof for steps one through four. In this case, at the third step of the evaluation procedure, ALJ Strothman determined that Leggitt's back problems were most similar to the category "Vertebrogenic Disorders," section 1.05 C of the "Listing of Impairments." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1991). The ALJ found that Leggitt did not meet the Listing's criteria (to be considered dis-

abled) because there was no evidence Leggitt suffered from "radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." *Record* at 20. The ALJ thus determined that although Leggitt suffered from a severe impairment, it was not severe enough to meet or equal the Listing. The ALJ found, however, that Leggitt's lower back problems and pain prevented her from returning to her past work. *Id.*

Consequently, the ALJ proceeded to the fifth step of the process where defendant bears the burden of showing that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of [her] age, education, and work experience." *Bowen v. Yuckert,* 482 U.S. 137, 142, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987). Leggitt's RFC to do work is what Leggitt "is still capable of doing on a regular and continuing basis, despite [her] impairments: [Leggitt's] maximum sustained work capability." *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988). To determine Leggitt's RFC, the ALJ is required to assess Leggitt's physical abilities and take into account her "exertional limitations (i.e., limitations in meeting the strength requirements of work)." *Id.* at 752. Once the claimant is placed in a RFC category (e.g., sedentary, light, medium, heavy, and very heavy), the ALJ turns to the Medical–Vocational Guidelines (the "grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1991). The grids direct a conclusion that the claimant is or is not disabled. If the finding is "not disabled," this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. *Williams v. Bowen,* 844 F.2d at 752.

■ The ALJ cannot exclusively rely on the grids, however, if the claimant has nonexertional limitations that significantly limit her "ability to perform the *full range* of work in a particular RFC" category on a

sustained basis. *Teter v. Heckler,* 775 F.2d 1104, 1105 (10th Cir.1985) (emphasis supplied); 20 C.F.R. Pt. 404, Subpt. P., App. 2, sec. 200.00(e) (1991). Use of the grids "is predicated on an impairment that limits the strength or exertional capacity of the claimant." *Talbot v. Heckler,* 814 F.2d 1456, 1460 (10th Cir.1987). Where nonexertional limitations are present, the grids become only a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." 20 C.F.R. Pt. 404, Subpt. P., App. 2, sec. 200.-00(e)(2) (1991). Pain may be a nonexertional limitation. *Williams v. Bowen,* 844 F.2d at 752. "Similarly, if a claimant's [RFC] does not meet the definition of one of the *exertional* ranges (sedentary through heavy), then the ALJ is to 'consider the extent of any erosion of the occupational base and assess its significance.... Where the extent of the erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource.'" *Talbot v. Heckler,* 814 F.2d at 1460–61, citing Social Security Ruling 83–12 (emphasis in original).

The ALJ concluded that Leggitt was capable of performing both light and sedentary work. *Record* at 23–24. The ALJ then turned to the grids and applied rule 202.10 [1] for a final determination of "not disabled." No vocational experts testified at the hearing. In applying the grid, the ALJ disregarded Leggitt's nonexertional limitations, concluding that Leggitt "exaggerates her degree of disability and her degree of pain and limitation." *Record* at 21. Although the ALJ expressly acknowledged that Leggitt does suffer pain in her back and legs, because he could find no medical nexus, he gave no weight to Leggitt's complaints of disabling pain in her shoulder, arm, wrist, and hand, or that she could only sit or stand for short periods of time and walk very short distances. *Record* at 21, 24.

---

1. Defendant argues that the ALJ erred in applying rule 202.10 as that rule is for a claimant 50–54 years old. Ms. Leggitt was four months away from age 50 at the time of the hearing.

Defendant contends that rule 202.17, for ages 18–49, is the correct rule. Both rules direct a conclusion of "not disabled" for light work.

## ANALYSIS

■■■ In reviewing the decision of defendant, my review is limited to determining whether the decision is based on substantial evidence. 42 U.S.C.A. § 405(g) (West 1991); *Jordan v. Heckler,* 835 F.2d 1314, 1316 (10th Cir.1987). This court cannot reweigh the evidence nor substitute its judgment for that of defendant. *Id.* This does not mean, however, that my review is merely cursory. To find that defendant's decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. *Frey v. Bowen,* 816 F.2d at 512. A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Turner v. Heckler,* 754 F.2d 326, 328 (10th Cir.1985). Defendant's decision is also subject to reversal if he applied the incorrect legal standard. *Frey v. Bowen,* 816 F.2d at 512. I consider the record as a whole. *Williams v. Bowen,* 844 F.2d at 750.

Leggitt argues that the ALJ's decision was not based on substantial evidence because: (1) his assessment that Leggitt was capable of performing light work was not based on substantial evidence; (2) he rejected or did not give proper weight to Leggitt's treating chiropractor's reports; (3) he failed to specify the reasons for rejecting such evidence; (4) he rejected her complaints of disabling pain in her shoulder, arm and hand as not credible; and (5) he improperly speculated that Leggitt simply did not want to work, a conclusion unsupported by the evidence. If I find that the ALJ's finding that Leggitt has the exertional capacity to perform light work is not supported by substantial evidence, then it is not necessary to examine whether her nonexertional impairments also imposed limitations on her work capacity. I thus consider that issue first.

**2.** I note that if the ALJ had found that Leggitt had the capacity for only sedentary work and applied the corresponding rule for the same age

*Evidence of RFC for a Full Range of Light Work*

■■■ To sustain defendant's decision, I must find that the medical testimony provides substantial evidence that Leggitt could perform a *full range* of light work.[2] Light work is defined in the regulations as work that:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a *full or wide* range of light work, you must have the ability to do *substantially all* of these activities.

20 C.F.R. § 404.1567(b) (1991) (emphasis supplied). The RFC to do light work generally includes the capacity to do sedentary work. 20 C.F.R. Pt. 404, Subpt. P., App. 2, sec. 202.00(a) (1991). Sedentary work involves sitting and a certain amount of walking and standing. 20 C.F.R. § 404.-1567(a) (1991). The RFC must also reflect the ability to perform the job with reasonable regularity. *Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983) (citation omitted).

■■■ The ALJ found that Leggitt could perform a full range of light work "in spite of her pain and discomfort ... based on the clear assessments and opinions of her treating physicians." *Record* at 24. The record reveals that at least one of Leggitt's treating physicians, however, provided evidence to the contrary. The ALJ refers to Dr. Davis' 1988 evaluation of Leggitt's permanent physical restrictions. *Record* at 23. Dr. Davis' assessment was that Leggitt could stand, sit, and walk continuously for only one hour at a time and that during a full work day, she could sit or stand for up to five hours each and walk for four hours. *Record* at 229. She can "occasion-

group (50–54), he would have reached a finding of disabled. Rule 201.09.

ally" use her lower extremities repeatedly, can "never" use her upper extremities repeatedly or reach above her shoulder. *Id.* She can never carry, lift, push or pull more than 50 pounds, but can frequently carry 10–20 pounds. *Id.* Dr. Davis indicated that Leggitt would be restricted to a job that would allow her the "freedom to change positions frequently." *Id.*

The ALJ also relied on the results of Dr. Crosson's consultative examination. In evaluating whether the ALJ's decision was supported by substantial evidence, I do not give much weight to the Dr. Crosson's report. Generally, opinions of physicians "who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Broadbent v. Harris,* 698 F.2d at 412, citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980). Dr. Crosson did not view the x-rays of Leggitt's cervical spine, and while he noted the Leggitt could move, he did not test how long Leggitt could endure remaining in a certain position. Notably, Dr. Crosson did not disbelieve Leggitt's complaints of pain.

To find that Leggitt was capable of light and sedentary work, the ALJ apparently assumed that alternately sitting, standing, and walking for no more than one hour at a time allows one to perform a full range of light work. This assumption, however, does not allow for "the kind of extensive sitting, standing and walking contemplated by the definition of light activity." *Talbot v. Heckler,* 814 F.2d at 1463. Also, Dr. Davis' restrictions on Leggitt's repeated use of her upper extremities seems to impose limitations on Leggitt's ability to perform a full range of light work, since it requires "some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (1991). The ability to sit for only one hour at a time also appears to preclude most sedentary jobs. Social Security Ruling 83–12 supports this conclusion: where the claimant must alternate sitting or standing, "[s]uch an individual is not functionally capable of doing either the prolonged sit-

ting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." The RFC for light work requires the capacity to "perform the requisite physical acts day in and day out...." *Talbot v. Heckler,* 814 F.2d at 1464, quoting *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982).

The record reveals uncontradicted evidence that Leggitt's activities and daily routine were very limited. Her attempts at doing housework were marked by regular breaks to rest, lie down, and use ice packs to reduce swelling in her hands. The performance of certain household chores does not demonstrate capacity to sustain regular activities of work nor does it discount her accounts of disabling pain. *Frey v. Bowen,* 816 F.2d at 516. Although recognizing the restrictions assessed by Dr. Davis, the ALJ also failed to consider the significance of these exertional limitations on the occupational base—whether there remained a significant number of jobs in the national economy. *See Talbot v. Heckler,* 814 F.2d at 1460–61.

My review of the record as a whole shows an absence of substantial evidence that Leggitt has the exertional capacity to perform a full or wide range of light work. However, even if Leggitt had the capacity to do light work, I find her nonexertional limitation of pain to preclude the ALJ's strict application of the grids.

*Pain and Credibility*

To conclude that Leggitt had no significant nonexertional limitations, and thereby rely exclusively on the grid, the ALJ rejected both the subjective complaints of pain by Leggitt and the reports of Leggitt's treating chiropractor, Dr. Sutton. Pain can be an exertional or nonexertional limitation. *Gossett v. Bowen,* 862 F.2d 802, 806 (10th Cir.1988). Nonexertional pain can be characterized as pain that is present whether or not a claimant is exerting herself in activities such as walking, standing, lifting, and carrying. Leggitt's

**1118**

pain was thus an exertional impairment on her ability to walk, stand, lift, carry, push, pull, and reach. *Huston v. Bowen*, 838 F.2d at 1131–32. Leggitt's pain and limited range of motion were nonexertional impairments of her ability to sit. *Id.* The ALJ found Leggitt's subjective complaints of pain and limitations on her activities exaggerated and not credible. *Record* at 21. While Leggitt's subjective complaint of pain is by itself insufficient to establish disability, *Brown v. Bowen*, 801 F.2d 361, 363 (10th Cir.1986), it must be considered in evaluating a claim based on pain. *See Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir.1987). The court in *Luna* established a three-step inquiry for the consideration of pain in a claim for disability benefits. The first step examines whether there is objective medical evidence of an impairment which could reasonably be expected to produce the alleged pain. *Id.* The second step looks for a nexus between the impairment and the alleged pain. At the third step, the ALJ considers all the medical data, any objective indications of pain, and the subjective accounts of the severity of the pain. *Id.*

### 1. Objective Evidence of Pain

As noted previously, the ALJ acknowledged that Leggitt's lower back condition could cause back and leg pain. *Record* at 21. The ALJ, however, completely discounted Leggitt's complaints of upper body pain. Although claiming to have "assidulously [sic] searched the medical reports" for evidence, the ALJ ignored x-ray and other objective evidence of disc degeneration in Leggitt's cervical spine reported by Dr. Sutton. *Record* at 21. In this circuit, "the Secretary must give substantial weight to the testimony of a claimant's treating *physician*, unless good cause is shown to the contrary." *Frey v. Bowen*, 816 F.2d at 513 (emphasis supplied). This is known as the "treating physician rule." A question this case presents is whether the opinion of Dr. Sutton, a licensed chiropractor, is entitled to the same or similar consideration. Defendant argues that the ALJ did not have to consider Dr. Sutton's opinion as to Leggitt's physical condition or pain because the regulations do not list a

chiropractor as an "acceptable medical source[ ]." 20 C.F.R. § 404.1513(a) (1991). The ALJ may consider a chiropractor's opinion, however, "to help us understand how your impairment affects your ability to work." 20 C.F.R. § 404.1513(e)(3) (1991).

I do not find that section 404.1513(a) necessarily precludes the application of the treating physician rule to chiropractors. *Santiago v. Bowen*, 715 F.Supp. 614, 615 (S.D.N.Y.1989). The regulations acknowledge that a chiropractor's opinion can be helpful in proving inability to work. 20 C.F.R. § 404.1513(e)(3) (1991). While the Tenth Circuit has not expressly extended the treating physician rule to chiropractors, the court in *Frey v. Bowen*, 816 F.2d at 514, considered and relied on the findings of the claimant's treating chiropractor as well as the treating physician in finding exertional and nonexertional limitations. In deciding to give binding effect to a treating chiropractor's opinion, the court in *Santiago* noted the rigorous training program for chiropractors in New York. *Id.* at 615–16. Similarly in Colorado, chiropractors must undergo four years of training, the same length as for medical school. The training includes diagnosis and treatment of spinal injuries and conditions. *See* Colo.Rev.Stat. § 12–33–111 (1991 Repl. Vol.). As a condition for licensure in Colorado, chiropractors must complete a four-year program and pass courses in various scientific and clinical areas, including the diagnostic use of x-rays. *Id.* and section 12–33–112 (1991 Repl.Vol.). As in New York, Colorado chiropractors are "subject to supervision of a state board on matters of licensing and professional conduct." *Santiago*, 715 F.Supp. at 616; Colo.Rev. Stat. §§ 12–33–103, 107, 117 through 119 (1991 Repl.Vol.). They must also attend annual continuing education courses. Colo. Rev.Stat. § 12–33–116 (1991 Repl.Vol.). I conclude that a treating chiropractor's opinion as to the diagnosis, nature, and degree of impairment arising from a condition within the chiropractor's field of expertise should generally be accorded "substantial weight" under the treating physician

rule. *Santiago,* 715 F.Supp. at 615; *Poole v. Railroad Retirement Bd.,* 905 F.2d 654, 662 (2d Cir.1990) ("in light of the education, licensing, and supervision requirements to which chiropractors are subject in New York ... and the significant role [the treating chiropractor] has played in [the claimant's treatment], his opinion that [the claimant] is totally disabled does merit significant weight"); *Gaymon v. Sullivan,* 759 F.Supp. 106, 108 (E.D.N.Y.1991) (treating chiropractor's opinion is at least entitled to significant weight); *Guardino v. Bowen,* 662 F.Supp. 781, 785 (S.D.N.Y. 1987).

██ Leggitt has received regular and frequent care from Dr. Sutton since 1985 for her spinal injuries and pain. There does not appear any reason not to accord Dr. Sutton's opinion substantial weight under the treating physician rule on the extent of disability and the level of Leggitt's pain and limitations. The ALJ offered no reason why he failed to consider Dr. Sutton's findings of upper (and lower) body pain and his opinion that Leggitt was not currently employable. In fact, Dr. Sutton is only mentioned twice in passing in the ALJ's decision. *Record* at 21, 24. I note that the reports of Dr. Davis, the treating physician on whom the ALJ substantially relies, do not contradict Dr. Sutton's findings as to the existence and source of Leggitt's upper body pain. In fact, Dr. Davis found several "trigger" points and muscle tenderness in Leggitt's neck and a decreased cervical range of motion in February and again in May 1988. *Record* at 212, 230. His assessment of Leggitt's physical restrictions include severe limitations on the use of her upper extremities. These findings support Dr. Sutton's evaluation of Leggitt's neck and upper body pain. There appears no substantial evidence in the record to overcome Dr. Sutton's findings on Leggitt's upper body pain. Accordingly, the ALJ should have given substantial weight to Dr. Sutton's finding that there was medical evidence for her upper body pain, and that because of Leggitt's impairments, she was not currently able to work. Since I conclude that there is objective evidence of pain-producing impairments, I

look for a nexus between the these impairments and Leggitt's complaints of pain. *Luna v. Bowen,* 834 F.2d at 163.

### 2. Nexus

The nexus between the impairment and the subjective complaints can be loose. *Id.* at 165. "[I]f an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain" are sufficiently consistent to satisfy this step. *Id.* at 164 (emphasis in original). Disc degeneration is undisputedly a disease which can cause pain in the areas affected. The ALJ thus must consider all relevant evidence in determining whether Leggitt is disabled by pain. *Id.*

### 3. Consideration of Subjective Evidence

██ In the third step, all the evidence is considered to determine the effect of Leggitt's pain on her ability to perform light work. *Huston v. Bowen,* 838 F.2d at 1130 ("a determination of no disability cannot be made without a full evaluation of all subjective and objective evidence of pain"). The ALJ may assess Leggitt's credibility to decide if he believes her assertions of disabling pain. *Luna v. Bowen,* 834 F.2d at 163; *Williams v. Bowen,* 844 F.2d at 754. Generally, I "treat credibility determinations made by an ALJ as binding upon review." *Gossett v. Bowen,* 862 F.2d at 807, quoting *Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983). Where the ALJ finds a claimant incredible, he must make specific findings and state his reasons for disbelief. *Caldwell v. Sullivan,* 736 F.Supp. 1076, 1081 (D.Kan.1990). For the reasons set forth below, however, I am free to view the ALJ's assessment of Leggitt's credibility with a "skeptical eye." *Broadbent v. Harris,* 698 F.2d at 414.

Repeated references to Leggitt's chronic pain are found in the records and reports. Along with pain in her back and legs, which the ALJ does not really dispute, Leggitt has complained of upper body pain. As noted above, x-rays revealed subluxation and disc degeneration in her lumbar

and cervical spine after her injury in 1985. No x-rays apparently have been taken since then, but Leggitt's complaints have been continual and consistent. *Record* at 202 (reporting complaints in 1985), 156 (complaints in 1986), 193 (reporting complaints in 1987), 231 (reporting complaints in February 1988), 222 (reporting complaints in May, 1988), and 236 (reporting complaints in 1989). Dr. Davis found trigger points and a decreased range of motion in her neck in 1988. Leggitt testified that she takes extra-strength Excedrin throughout the day to ease the pain. She stopped taking the Motrin prescribed for her by Dr. Davis, because she could not afford it. *Record* at 43. Except in limited spurts, Leggitt cannot vacuum or.do other housework. She has given up her hobby of riding horses, and cannot sit or stand for long periods. If she is active with her hands, Leggitt must use ice packs to reduce the swelling in her hands. *Record* at 49.

The physician who reviewed Leggitt's application for benefits found that her complaints of pain were credible. *Record* at 86. Dr. Kaplan, the examining psychologist at the pain clinic, did not report that he felt Leggitt was exaggerating her pain in any way. *Record* at 220–24. Nor did Dr. Davis, who recommended that Leggitt be admitted to the pain clinic. Although the January 1989 report by Dr. Davis which reports that Leggitt "looks really good," it also reports that Leggitt was still in pain. *Record* at 249. I do not find that report to be helpful as to Leggitt's medical condition as it is fairly conclusory and does not appear to have involved any kind of physical examination. I am not required to give any weight to brief, conclusory medical "reports." *Frey v. Bowen,* 816 F.2d at 513; 20 C.F.R. § 404.1513 (1991) (specifying the contents of medical reports).

The ALJ found Leggitt's testimony regarding her pain was not credible because it was "exaggerated" and inconsistent with the pain medication Leggitt was taking. *Record* at 21–22. Although claiming to have "assidulously [sic] searched the medical reports," *id.,* the ALJ ignored x-ray and other objective evidence of the source of pain in Leggitt's shoulder, arm, and hand reported by Dr. Sutton. *Record* at 198, 203. The ALJ concluded that her complaints of upper body pain were thus "unfounded," and he gave them absolutely "no consideration." *Record* at 21. In discrediting her pain, the ALJ failed to note her attempts at controlling the pain, such as her willingness to check herself into the hospital for the intensive two-week pain management program.

The ALJ also found inconsistencies in the medical records weighing on Leggitt's credibility concerning her inability to sleep. *Record* at 22. I find no such suggestive inconsistencies. Difficulty in sleeping clearly includes "periodic early morning awakening." *Id.* Also, the ALJ points to Dr. Davis' report of July 14, 1988, that Leggitt's "sleep has been good." *Id.* The ALJ fails to point out, however, that at that time Leggitt was on medication prescribed by Dr. Davis to help her sleep. When she discontinued taking the medication because of excessive daytime drowsiness, she once again had difficulty sleeping. *Record* at 252.

The ALJ's assessment of Leggitt's motivation to work also influenced the ALJ's credibility findings. Leggitt's motivation was apparently suspect because she receives Worker's Compensation benefits. *Record* at 23. The ALJ concluded from her earnings record that she was receiving more money in benefits than she received in most of the years when she was working: "There is thus a significant disincentive for the claimant to work, when she is receiving an income greater than when she was working." *Id.* The ALJ is required to be fair and impartial, and not prejudiced by a claimant's financial status (receipt of state benefits). *Caldwell v. Sullivan,* 736 F.Supp. at 1081. The ALJ also commented that he was "persuaded that [Leggitt] has convinced herself that she cannot or does not want to work." *Record* at 24. This statement is completely unsupported; in fact, it is directly contradicted by the record. Several of Leggitt's examining physicians and psychologists that found that Leggitt was "motivated to work," *Record*

at 221, and "anxious to get on with her vocation," *Record* at 227, and that the source of her depression, which the ALJ also discounted, was partly due to her inability to work. *Record* at 220–21.

The ALJ's comments about Leggitt's aversion to work appear to be biased and unsupported by the record. I note that Leggitt made substantially more money in her last job than she receives in Worker's Compensation benefits.[3] Thus, she had an incentive to return to work. She did not apply for disability benefits until almost two years after she injured her back at work, and a year after she had to leave her job because of her injury. There was no evidence that Leggitt was dissatisfied with her last job and wanted to quit.

After a full review of the record, I conclude that there is insubstantial support for defendant's finding that Leggitt could perform a full range of light work. Where defendant does not meet his burden of showing that the claimant can perform other work in the national economy, reversal is appropriate. *Williams v. Bowen*, 844 F.2d at 760. Even if Leggitt had the capacity for light work the record indicates that Leggitt's nonexertional pain limits her capacity for light work on a sustained basis. This finding precludes the mechanical application of the grids. "[C]ourts do not hesitate to overturn the Secretary's finding" when the grids are applied without adequate consideration of the claimant's pain. *Id.* The ALJ gave nothing more than the most meager consideration of Leggitt's testimony as to her pain. Because the ALJ ignored the x-ray evidence reported by Dr. Sutton, and gave "no consideration" to Leggitt's complaints of upper body pain, the ALJ did not adequately consider Leggitt's nonexertional pain.

The record supports a determination that Leggitt is disabled within the meaning of the Social Security Act. Further fact finding is unnecessary where it would serve no useful purpose and would only delay the determination of benefits. *Williams v. Bowen*, 844 F.2d at 760; *Broadbent v.*

*Harris*, 698 F.2d at 414 (reverse and award benefits where decision not supported by substantial evidence). Accordingly, I reverse defendant's decision and remand for the calculation and award of benefits. It is hereby

ORDERED that:

1. Defendant's decision that plaintiff is not disabled is reversed.

2. This case is remanded to defendant with instructions to award benefits pursuant to plaintiff's application.

### ORDER ON MOTION FOR RECONSIDERATION

This matter is before the court on "Defendant's Motion Under Rule 59(e) of the Federal Rules of Civil Procedure" filed on October 20, 1992. Defendant urges the court to alter or amend the judgment entered by this court on October 2, 1992. This court found that the administrative law judge ("ALJ") erred in classifying Plaintiff Virginia M. Leggitt as "not disabled." The court therefore reversed and remanded for determination of benefits.

In his motion to alter or amend judgment, defendant argues that (1) the court gave improper weight to evidence submitted by plaintiff's chiropractor, Dr. Sutton; and (2) the ALJ's credibility determinations, which were called into question by the court, were appropriate. *Defendant's Brief in Support of His Motion Under Rule 59(e) of the Federal Rules of Civil Procedure* at 2, 5–7 (filed Oct. 20, 1992) [hereinafter *Defendant's Brief*]. Plaintiff responds that the court properly considered the opinion of Dr. Sutton, the treating chiropractor. *Plaintiff's Brief in Response to Defendant's Motion Pursuant to Rule 59(e), Federal Rules of Civil Procedure* at 9 (filed Nov. 3, 1992) [hereinafter *Plaintiff's Response*]. Plaintiff also asserts that the ALJ's credibility determinations with regard to plaintiff's motivation and her descriptions of her pain are "speculative and not founded in law or reason." *Id.* Although I addressed substantially all of

---

3. Leggitt earned approximately $12,147 per year at her last job at the ceramics factory. She receives approximately $7,710 per year in Worker's Compensation benefits. *Record* at 23, 77.

**1122**

defendant's arguments in some detail in my earlier order in this case, several points deserve some emphasis and I will elaborate upon them. I conclude that defendant does not present any new, let alone convincing, arguments for altering or amending my judgment in this case and, therefore, I deny defendant's motion.

## ANALYSIS

The ALJ's determination is to be upheld only if it is supported by substantial evidence. *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir.1987). Substantial evidence is defined as evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence to support it. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir.1985).

*Treating Physician Rule*

Familiarity with the court's *Order and Memorandum of Decision*, dated October 2, 1992 [hereinafter *Order*], is assumed, and the facts will not be repeated here. I held that the opinion of Dr. Sutton, a chiropractor, should have been accorded "substantial weight" by the ALJ under the treating physician rule. *Order* at 17. This holding relies, in part, on the extensive training and licensing procedures that are in place in Colorado for chiropractors. *See id.* (citing *Santiago v. Bowen*, 715 F.Supp. 614, 615 [S.D.N.Y.1989]; *Gaymon v. Sullivan*, 759 F.Supp. 106, 108 [S.D.N.Y.1991]). Although the Tenth Circuit has not directly addressed this issue, the court's holding in *Frey v. Bowen*, 816 F.2d 508 (10th Cir.1987), indicates an implicit approval of the application of the treating physician rule to chiropractors, particularly when their reports corroborate other physician's opinions. *Frey*, 816 F.2d at 514 (holding that ALJ must show good cause for rejecting chiropractor's report). A number of other courts have considered the opinions of treating chiropractors to be very important in reviewing Social Security appeals. *See*

*Wren v. Sullivan*, 925 F.2d 123, 126–27 (5th Cir.1991) (classified findings of a treating chiropractor as "objective medical evidence"); *Poole v. R.R. Retirement Bd.*, 905 F.2d 654, 662 (2nd Cir.1990) (holding that even without application of the treating physician rule, opinion of a chiropractor should be accorded great weight because of intensive training and role in treatment of claimant); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

The facts of this particular case strongly support application of the treating physician rule to Dr. Sutton. Dr. Davis (acknowledged by the ALJ as plaintiff's treating physician) and Dr. Sutton do not disagree in any substantial way. Although Dr. Davis was somewhat more optimistic than Dr. Sutton with regard to Leggitt's prognosis, both men agree that she is in pain. *Administrative Record* at 202–04, 249 [hereinafter *Record*]. Both men also found severely-decreased mobility of Leggitt's upper body, and possible causes of her upper-body pain. *Record* at 212, 229 (findings by Dr. Davis) and 198, 203 (findings by Dr. Sutton). Therefore, Dr. Sutton's opinion should have been accorded substantial weight. *Frey*, 816 F.2d at 514.

Other factors ignored by the ALJ show that his determination was not supported by "substantial evidence." *Turner*, 754 F.2d at 328. A chiropractor's opinions are still considered good evidence, even if the treating physician rule is not applied. *Greigo v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991). *See also* 20 C.F.R. § 404.1513(e) (1992). Dr. Sutton was the only medical practitioner to examine Leggitt after her attempt to return to work in June 1989. *Record* at 238–40. Leggitt's employment for approximately four weeks greatly worsened her condition. This deterioration is reflected in Dr. Sutton's clinical notes. *Record* at 236–37. The ALJ did not even mention, or give reasons for rejecting, this uncontroverted medical evidence of the impact of re-employment on Leggitt. Therefore, I refuse to alter or amend my findings with regard to this issue.

*ALJ's Credibility Determination*

Generally, the credibility determinations of an ALJ are binding upon review. *Gossett v. Bowen,* 862 F.2d 802, 807 (10th Cir.1988). An ALJ must, however, make specific findings when he finds a claimant incredible. *Caldwell v. Sullivan,* 736 F.Supp. 1076, 1081 (D.Kan.1990). This ALJ did not do so. I found the ALJ's consideration of subjective evidence, such as plaintiff's motive for not returning to work and her allegedly-exaggerated claims of pain, was "biased and not supported by the record." *Order* at 22. The court's reasoning is set forth in detail in its order. To address defendant's arguments in this motion, I would like to focus on several pieces of important evidence which directly refute the ALJ's findings.

First, with regard to the ALJ's finding that Leggitt was not motivated to return to work, a number of her physicians directly contradict such a conclusion. *See Record* at 221, 223 (reports of consulting physician Kaplan); 227, 249 (reports of treating physician Davis). In fact, these doctors repeatedly connected Leggitt's depression with her inability to work. *Id.* The ALJ did not give any reasons for not adopting these conclusions of Dr. Davis. *Frey,* 816 F.2d at 514 (treating physician rule may not be rejected without good cause). The ALJ did base his findings with regard to motivation on the fact that Leggitt is currently on state assistance—an improper inference. *Caldwell v. Sullivan,* 736 F.Supp. 1076, 1081 (D.Kan.1990) (holding that it is improper to conclude that a claimant is unmotivated to work if he is on state assistance). The ALJ took no notice of Leggitt's eager participation in a rehabilitation program (*Record* at 206–08) and her efforts to resume employment. Therefore, the ALJ's credibility determination with regard to Leggitt's motivation was in error.

Second, the ALJ found that Leggitt's accounts of her pain were "exaggerated." *Record* at 25. Despite assiduously searching the record and ALJ's decision, I can not find any evidence to back up this assertion. None of the doctors that examined plaintiff even hinted that she was exaggerating her pain. Rather, she was generally described by her physicians as pleasant and cooperative. *Record* at 215. The record contains plenty of physical evidence to corroborate Leggitt's complaints of pain. *Record* at 198, 203, 212, 229 (upper body pain) and at 125, 163, 172 (lower body pain). In fact, Dr. Davis recommended Leggitt participate in a pain rehabilitation program which she completed successfully. *Record* at 206. Therefore, since there is a great deal of evidence in the record to refute the ALJ's credibility determinations, I will not alter or amend my judgment with regard to this issue.

I find that the record is complete with regard to the pertinent issues in this case. Further fact findings on remand will serve no purpose. *Williams v. Bowen,* 844 F.2d 748, 760 (10th Cir.1988); *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.1983). "[T]he court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished." *Dvorak v. Celebrezze,* 345 F.2d 894, 897 (10th Cir.1965). Leggitt has been attempting to procure benefits for six years. It is about time she receives the aid she is entitled to. On the basis of the foregoing conclusions, it is therefore

ORDERED that defendant's motion to alter or amend judgment is DENIED.